## MILLER et al. *v.* ANDRUS et al.

To ascertain whether any reduction is to be made of a donation on account of its exceeding the disposable portion, the property belonging to the donor at the time of his death, must be estimated at its value at that time. C. C. 1492.

A donation *inter vivos* of moveables, or of incorporeal things, is null, unless executed by an act passed before a notary and two witnesses. C. C. 1523.

APPEAL from the Court of Probates of St. Landry, *Garrigues*, J.
The judgment of the court was pronounced by

SLIDELL, J. This suit is a contest between the heirs of *Joseph Andrus*, in

which not only a distribution of the succession is sought, but the annulling, or reduction and collation are claimed, of certain donations *inter vivos* and *mortis causa* made by the deceased. The most important item involved in this controversy is, a donation of certain lands, slaves and other property, made *inter vivos* by *Joseph Andrus*, the deceased, to his son, *Jesse Andrus*. The plaintiffs do not object to the validity of this donation in point of form, but they allege that it exceeds the disposable portion and must be reduced. This right of reduction turns upon the question, whether the value, at the time of the testator's death, of the property thus donated, in the state in which it was at the period of the donation, exceeds the one third of the mass, formed pursuant to article 1492 of the Civil Code, by aggregating the property belonging to the donor at the time of his death, according to its value at that time, and fictitiously adding thereto the value *as above* of the donated property, and deducting sums due by the estate. To aid us in the investigation of this question of fact, the parties have produced the record of the succession; but it does not furnish all the materials requisite for a conclusion; and the statements furnished by the respective counsel do not supply the deficiency. The property of the testator must be considered, according to its value at the date of the decease, and not, as suggested by counsel, according to what it subsequently produced at the sales from time to time made. The inventory made immediately after the decease of the donor, and which is not impeached as unfairly made, exhibits the then value of a portion of the succession; but the other assets, to wit, the debts due to the succession, are merely recited, without any estimation of their value. We are not enabled from the record to establish the amount of capital and interest due at the death of the testator, collected upon them; and it is admitted by counsel that these assets are not good to the full amount. Again, the sums due by the estate are not accurately exhibited. It is true that the record presents the payments made by the executor; but his accounts are not in such a form as to enable us to separate capital from interest accruing since the death, and to fix the precise amount due by the deceased at the date of his death. That is the point of time which, both as to assets and liabilities, must govern in determing the reduction.

There is no ambiguity in the Code (art. 1492), as to the mode of determing the reduction; but we are without the necessary facts for its application, and must therefore remand the cause.

In doing so, it is proper, in order to simplify the further proceedings in this cause, and to facilitate the settlement of a succession which has been open for so many years, to add our views with regard to the rights of *Joseph E. Andrus* and of *Susan Collins*.

It appears that *Joseph Andrus* died, in May, 1834. In October, 1833, the deceased executed in favor of *Joseph E. Andrus*, one of his children, an instrument in which he acknowledges himself to be indebted to his son in the sum of $5000, which he binds himself " to pay to Joseph in horned cattle, to be delivered to the said Joseph, his heirs, or assigns, in the month of June next." The deceased also executed, on the same day, in favor of his daughter, *Susan Andrus*, the widow *Collins*, an instrument, in the form of a promissory note, to her order, for the sum of $3500, payable in the ensuing May, with interest.

There is no evidence to establish any indebtedness, in the ordinary course of business, by the father to either of these children. The evidence they have offered to sustain these acknowledgments of indebtedness, is the rendition of services, by them respectively, to the deceased. No other consideration is pretended, and the nature and extent of the services are vaguely exhibited. We

are satisfied that these two obligations are disguised donations; and they have not the form required by law for donations *inter vivos*. Civil Code, art. 1523. These instruments are void; and the heirs to whom they were given are not entitled to claim their payment in the settlement of the succession.

It is therefore decreed that, so much of the judgment appealed from as declares valid the donations therein recited, made to *Jesse Andrus* and to *Susan M. Collins*, and rejects the claims of said plaintiffs to have said donations collated, and so much also of said judgment as recognizes the validity of the obligations for $5000 and $3500, executed on the 19th October, 1833, by said *Joseph Andrus*, in favor of said *Joseph E. Andrus* and said *Susan M. Collins*, be avoided; and it is further decreed that the said obligations of $5000 and $3500 be declared null and void, and that no credit be allowed therefor to the said obligees, *Joseph E. Andrus* and *Susan M. Collins* respectively, in the settlement of said succession, reserving to said *Joseph E. Andrus* and *Susan M. Collins* respectively, any claim which they, or either of them, may have against said succession as creditors for services rendered: and it is further decreed that, this cause be remanded for further proceedings, according to the principles declared in this decree and according to law, the appellees paying the costs of this appeal.

*Swayze, Martin*, and *T. H. Lewis*, for the appellants. *W. B. Lewis* and *Dupré*, for the defendants.